LaSALLE CEMENT CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ALPHA PORTLAND CEMENT CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 22453, 34708. Promulgated March 27, 1929.

*F. C. Taylor, Esq.*, for the petitioner.
*E. C. Lake, Esq.*, for the respondent.

1130

## OPINION.

PHILLIPS: The stipulation filed by the parties disposes of all issues except that the proper treatment, in computing net income, of the transactions in cloth bags which are detailed in the findings. In *LaSalle Portland Cement Co.*, 4 B. T. A. 438, a deduction from income was claimed by reason of somewhat similar transactions and was denied by the Board. The present case is presented upon a different state of facts and a different theory and this prior decision is not, as counsel for the respondent contends, decisive of the question before us. From the facts in that case it appeared that the petitioner there sold its bags with an agreement to repurchase at the sales price when returned. The sales price, although arbitrarily fixed, was substantially the same as cost. The question presented by that state of facts was whether any deduction could be taken by reason of the obligation to repurchase the bags. Here the evidence is that the petitioner did not sell its bags. The form of the transaction was a lease, petitioner retaining title, with provisions for liquidated damage in the event that the bags were not returned. The amount charged to the customer until the bags were returned exceeded the cost of the bags. The question now presented is not one of allowing a deduction from income; rather, it is whether these transactions gave rise to any income and, if so, how much.

Upon the record before us, it seems clear that these bags were not sold by petitioner to its customers at the time they were shipped out. It seems equally clear, however, that some income was derived from these transactions. The deposit exacted from the customer exceeded the cost of the bags to petitioner. To the extent that such deposits were forfeited, the excess over cost of bags represents income. If the number shipped out was the same from month to month and the bags were returned in a constant, even manner, an equal number being returned each month, the difference between the balance in the " Bag Redemption " account at the beginning of any period and at the end of that period would correctly reflect the excess of the forfeited deposits over cost. But the record discloses that such is not the case. The amounts shipped varied from time to time, as did the promptness with which bags were returned. The result has been that the Commissioner, using the difference between the balances in the account at various dates, has determined a profit of $138,192.15 for a year in which 4,611,917 bags were shipped and a profit of $4,526.83 for a period during which 3,555,485 bags were shipped. Even worse, he has determined a loss to one of the companies during one of these periods when it must be evident that these transactions can not result in a loss, for petitioner receives more for its forfeited

bags than they cost and for bags returned it returns only what has been deposited with it. The result is bound to be a profit. We conclude that the method used by respondent, while it may be correct in principle when properly applied, does not correctly reflect the income of the petitioners for the years before us. On the contrary, it seriously distorts the true income.

The situation is not unlike that which was presented in *Great Northern Railway Co.*, 8 B. T. A. 225, where one of the questions presented was whether the petitioner should accrue as income interest on certain bonds when it appeared that such interest could not be paid. The Board said (p. 269):

> If the petitioner had kept its accounts in the manner suggested by the respondent it would have reported to the public each year that it had earned income in excess of one million and a half dollars which, as a matter of fact, it had not received and which in all probability it would never receive. Such a system of accounting would not have reflected the petitioner's true income but would have given to its stockholders and the public a false idea of its income.

Had the present taxpayers in their financial statements considered the charges for bag deposits outstanding May 31, 1920, as income received during the preceding year, they " would have given to their stockholders and the public a false idea of their income."

On the other hand, we can not agree with petitioners that no part of the amounts collected from customers as security for the return of the sacks is income. There is a gain to petitioners for every sack which is not returned. Experience showed that 10.1 per cent of the sacks sent out would never be returned. On this basis, the unclaimed amount is bound to increase from year to year. As we have pointed out above, if this increase was distributed evenly or ratably over the years, the amount of the income would be reflected by the increase in the " Bag Redemption " account, but this is not the situation. It was urged by the petitioner at the hearing that if any part of the unreturned deposit carried in this account was income, it would be only 10.1 per cent of the net increase in the account during the year. At the hearing it was pointed out that 10.1 per cent was the ratio which unreturned bags bore to the total number of bags shipped during the year and that if such ratio was to be used it would have to be applied to the shipments of bags for the entire year and not merely to those unreturned at the close of the year. In other words, the experience was that 10.1 per cent of all bags shipped would not be returned and this can not be applied only to the number unreturned at the end of the year to arrive at the number of defaults which took place during the year. Counsel for petitioners in their brief recognize the force of this method of computing the amount which was forfeited.

The amounts credited to the "Bag Redemption" account during the year represent the difference between the amounts deposited and the cost of the bags. If none of the bags shipped during the year were returned, the amounts credited to the account during the year would all become income. But experience indicates that 89.9 per cent will be returned and 10.1 per cent will be forfeited. We are consequently of the opinion that the income of petitioners will be reflected by including as income for each of the taxable periods 10.1 per cent of the amounts so credited to this account during the year. The net income as set out in the stipulation should be adjusted accordingly.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

ARUNDELL dissents.

———

STERNHAGEN, dissenting: It seems to me that the amount received or accrued in a year for the bags is among the company's gross receipts and this is reduced by the amount paid out or definitely incurred by way of "refund." The apparent distortions of one year are equalized in the next if the accounting is uniform and consistent. There is no legal justification for measuring income upon an estimate of the percentage of bags likely to be returned or the probable amount likely to be refunded, even if the estimate be based on testimony of actual past experience.

TRAMMELL, VAN FOSSAN, and MURDOCK agree with this dissent.